FILED & JUDGMENT ENTERED
Christine F. Winchester

September 11 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Ashley Austin Edwards
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **HEATHER ANNETTE DAVIS,** ) | Chapter 7 |
| ) | Case No. 25-30339 |
| Debtor. ) | |
| ) | |

## ORDER GRANTING THE BANKRUPTCY ADMINISTRATOR'S MOTION AND GIVING THE DEBTOR 30 DAYS TO CONVERT THE CASE

This matter is before the Court on the Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2) (the "Motion to Dismiss") filed by the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") on June 18, 2025.

The Court held a hearing on the Motion to Dismiss on August 25, 2025 (the "Hearing"). At the Hearing, Michael K. Elliott appeared on behalf of the Debtor, and Heather W. Culp appeared on behalf of the Bankruptcy Administrator. The Court took the matter under advisement and now renders its opinion. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

1

## BACKGROUND AND FINDINGS OF FACT

On April 8, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Petition"). [D.I. 1].[1] The Debtor's gross income totaled $206,942 in 2023, $187,824 in 2024, and is on track to reach $208,704 in 2025.[2] [D.I. 16-1 at 2]. She is divorced and has two dependents, a daughter (age 14) and a son (age 7). [D.I. 16 at 21]. Her household budget also includes the expenses of her niece and mother, who both live with the Debtor. [D.I. 20 at 3]. The Debtor's debts are primarily consumer debts. [D.I. 1].

While she did not include Official Form 122A-1 (titled "Chapter 7 Statement of Your Monthly Income") or Official Form 122A-2 (titled "Chapter 7 Means Test Calculation") with her Petition as required by 11 U.S.C. § 707(b)(2)(C),[3] she ultimately filed these documents on April 29, 2025 (the "Original Means Test Calculation"). [D.I. 10]. The Original Means Test Calculation did not give rise to the presumption of abuse. [D.I. 10 at 1].

On May 23, 2025, the Bankruptcy Administrator filed a Statement of Presumed Abuse. [D.I. dated 5/23/2025]. On May 27, 2025, the Clerk filed the Clerk's Notice of Presumed Abuse Under 11 U.S.C. § 707(b)(2). [D.I. 17].

On May 27, 2025, the Debtor filed several amended documents, including

---

[1] The Debtor filed the petition pro se but subsequently hired an attorney.

[2] The Debtor reported $52,176 for January 1 through April 8, 2025 which amounts to an annualized income of approximately $208,704.

[3] Subsequent statutory references in this order are to Title 11 unless otherwise indicated.

2

amended Forms 122A-1 and 122A-2 (the "Amended Means Test Calculation").[4] The Amended Means Test Calculation again did not give rise to the presumption of abuse. [D.I. 16 at 16].

On June 18, 2025, the Bankruptcy Administrator filed the Motion to Dismiss. The Motion to Dismiss explains that while the presumption of abuse does not arise on the Debtor's Amended Means Test Calculation as filed, the Bankruptcy Administrator identified several errors in the calculations on Forms 122A-1 and 122A-2, and that when corrected, the presumption of abuse does in fact arise. [D.I. 20 at 3]. Specifically, she found that the Debtor's monthly disposable income is $1,449.53, and her total disposable income for 60 months is $98,971.80.[5] [D.I. 20 Exhibit A]. Since her total disposable income for 60 months is more than $17,150, the presumption of abuse arises. *See* Official Form 122A-2, Chapter 7 Means Test Calculation, Part 3.

The Debtor filed the Response to the Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2) (the "Response") on July 1, 2025, which concedes that the presumption of abuse exists. [D.I. 29]. It argues, however, that the Debtor can show special circumstances which rebut the presumption of abuse. Namely, it explains

---

[4] The May 27, 2025 filing includes the Official Form 106Sum ("Summary of Your Assets and Liabilities and Certain Statistical Information"), Official Form 106 A/B ("Schedule A/B: Property), Official Form 106C ("Schedule C: The Property You Claim as Exempt"), Official Form 106D ("Schedule D: Creditors Who Have Claims Secured by Property"), Official Form 106I ("Schedule I: Your Income"), Official Form 106J ("Schedule J: Your Expenses"), Official Form 106Dec ("Declaration About an Individual Debtor's Schedules"), Official Form 107 ("Statement of Financial Affairs for Individuals Filing for Bankruptcy"), Official Form 122A-1 ("Chapter 7 Statement of Your Monthly Income"), and Official Form 122A-2 ("Chapter 7 Means Test Calculation"). [D.I. 16].

[5] The Debtor's 60-month disposable income of $98,000 represents the amount of money that could be paid to creditors over a Chapter 13 plan.

3

that the Debtor's fourteen-year-old child (the "Child") suffers from significant "medical conditions/disabilities" that require her to attend a certain private school (the "Private School"). [D.I. 29 at ¶5]. The Private School costs around $24,000 per year, and when factoring in this expense, the Debtor's net income no longer exceeds the statutory thresholds which gave rise to the initial presumption of abuse. [D.I. 29 at ¶13].

At the Hearing, the parties stipulated that the presumption of abuse existed. The argument and testimony, therefore, focused on whether the Debtor could rebut the presumption of abuse pursuant to § 707 (b)(2)(B).

The Debtor testified at the Hearing. She thoroughly explained the Child's medical conditions, the specific accommodations that the Child required, and how she came to the conclusion that the Child needed to attend the Private School. She also introduced letters from certain professionals explaining that the Child needed individualized attention and a small group setting to successfully manage academic and social learning.

The Debtor stated that the Child was diagnosed with sensory processing disorder at three years old. At the time of the bankruptcy filing, the Child was enrolled in a private homeschool program held at a teacher's home and included only two other children. This program, however, was only available through eighth grade. Therefore, she had to find an alternative for the upcoming school year.

The Debtor searched for similar homeschool programs but could not find any for high school students. She could not homeschool the Child herself because she

4

had to work. She also considered the local public school. She and the Child toured the public school and spoke with the counselor and the person that was over the tours about how they accommodated students with sensory disorders. The person with whom they spoke explained that the school had some resources on staff that the children could go to when they felt like they were having issues. The Debtor left the tour unsatisfied that these accommodations would be sufficient for the Child. She then contacted the Private School and worked with them to develop an accommodations plan that she believed would meet all of the Child's needs.

The Debtor believes that the larger public institution simply would not be able to provide the accommodations that the Private School agreed to, such as having a teacher eat lunch with the Child and providing more outside time. At the public school, the Child would have about 400 students in her grade. At the Private School, there would only be 16.

According to her testimony, the Child has never attended public school. The Debtor has also never requested that Charlotte-Mecklenburg Public Schools ("CMS") evaluate the Child's needs and propose a section 504 plan.

## DISCUSSION

Once the presumption of abuse arises, section 707(b)(2)(B) provides that it "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." § 707(b)(2)(B)(i). While the Bankruptcy Code does not

5

provide a specific definition of special circumstances, "[t]he similarity in nature of the two examples is that they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses." *In re Smith*, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008). Ultimately, in order to qualify to rebut the presumption of abuse, the expense in question must be necessary and reasonable to the extent that "there is no reasonable alternative other than the payment of the expense." *See In re Hammock,* 436 B.R. 343, 354 (Bankr. E.D.N.C 2010) (citation omitted).

The Debtor argues that the Child's medical condition is a special circumstance that requires her to pay around $24,000 per year to attend the Private School. The Court heard extensive testimony at the Hearing on the Child's special needs and how the Debtor came to the decision that the Child needed to attend the Private School.

At the Hearing, the Bankruptcy Administrator explained that while she has no reason to believe that the Debtor honestly believes that attending the Private School is in the best interest of her Child, unfortunately, that is not the legal standard that the Bankruptcy Court must consider. Instead, in order for the Court to find that the expense in question qualifies to rebut the presumption of abuse, it must find that the expense is in fact necessary and that there is no reasonable alternative other than the payment of that expense.

The Bankruptcy Administrator introduced a recent supreme court case which addresses the federal laws and protections for children with disabilities and their

6

right to an appropriate education. *See A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335 (2025). *Osseo* explains that "the Individuals with Disabilities Education Act (IDEA) offers federal funds to States in exchange for the commitment to furnish the core guarantee of a 'free appropriate public education' to children in public schools with certain physical or intellectual disabilities." *Id.* at 335. Moreover, Chief Justice Roberts specifically states that the centerpiece of the IDEA is the provision of an "individualized educational program," which requires schools to spell out a plan to meet all of the educational needs of a child with a qualifying disability ("section 504 plans"). *See Id.*

While the Court does not question that this Debtor, as a mother, knows what is in the best interest of her Child, it cannot find, on this record, that the expense in question is necessary to the extent that the there is no reasonable alternative other than the paying it.

In particular, the Debtor has failed to show that she fully investigated other alternative options. As highlighted in *Osseo*, public schools in the United States are required to provide a "free appropriate public education" for students with disabilities through the implementation of section 504 plans. In fact, CMS employs School Section 504 Coordinators as well as a District Section 504 Program Manager, whose jobs are to help meet this requirement. *See Section 504: Guidelines for Parents and Guardians,* Charlotte-Mecklenburg Schools (Sept. 9, 2025), https://www.cmsk12.org/studentservices/student-wellnessandacademicsupport/section-504-guidelines-for-parents-and-guardians. Although the Debtor visited the

7

public school and spoke with the school counselor about accommodations that they had in place for other special needs students, she never even requested that CMS evaluate the Child's needs and propose a section 504 plan. Instead, she chose to enroll the Child in the Private School with which she had a prior relationship and already knew would be able to meet the Child's needs.

## CONCLUSION

The presumption of abuse arises in this case. In order to rebut the presumption of abuse, the Debtor has the burden of showing special circumstances that give rise to a necessary and reasonable expense for which there are no reasonable alternatives. The Debtor has failed to show that she fully investigated all alternative options and therefore has failed to meet her burden at this time. Therefore, allowing the Debtor to proceed in this Chapter 7 case would be an abuse of the provisions of the chapter pursuant to § 707(b). Accordingly, the Bankruptcy Administrator's Motion to Dismiss is hereby **GRANTED.** The Debtor will be given 30 days from the entry of this order to convert the case to one under Chapter 13, or the case will be **DISMISSED**.

**SO ORDERED**.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |